## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HEALTH ONE MEDICAL CENTER, EASTPOINTE P.L.L.C., individually and as the representative of a class of similarly-situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>MOHAWK, INC. d/b/a MOHAWK MEDICAL, BRISTOL-MYERS SQUIBB COMPANY, and PFIZER INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.: 5:16-cv-13815<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT PFIZER INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Pfizer Inc. ("Pfizer") respectfully moves to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted.

Plaintiff Health One Medical Center Eastpointe P.L.L.C. ("Plaintiff") recently named Pfizer as a defendant in its First Amended Class Action Complaint seeking a nationwide class action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* and common law and statutory conversion under Michigan state law.  Plaintiff's claims center on its alleged receipt of two single-page faxes purportedly sent by defendant Mohawk,

Inc. ("Mohawk").  Plaintiff fails to plead any facts demonstrating that Pfizer was the "sender" of either of those two faxes – a prima facie element required to establish Pfizer's liability to Plaintiff under the TCPA.

Plaintiff's Complaint alleges *no* facts showing any action (or inaction) on the part of Pfizer that could lead to liability under its TCPA or conversion causes of action.  Plaintiff has not alleged that Pfizer physically sent the faxes at issue, that Pfizer requested, authorized, or approved the sending of the faxes, or even that Pfizer was *aware* of the faxes at any time before this lawsuit was filed against it. Plaintiff furthermore has not alleged the existence of *any* business relationship between Pfizer and Mohawk, Inc., the entity that Plaintiff claims did physically send the faxes and against whom Plaintiff has already obtained default judgment in this lawsuit.  Plaintiff's theory that Pfizer might be held liable under the TCPA simply because a product that may not even have been manufactured by Pfizer was offered for sale by Mohawk (without the use of Pfizer's name or the registered name of Pfizer's product) is untenable and cannot serve as a legal basis for attaching liability to Pfizer as a "sender" of the faxes under the TCPA.

WHEREFORE, for the reasons stated in this Motion and others set forth in Pfizer's Brief in Support of Its Motion to Dismiss filed contemporaneously herewith, Pfizer respectfully requests that the Court find that Plaintiff has failed to

- 2 -

state a claim upon which relief can be granted and dismiss all claims against Defendant Pfizer Inc. with prejudice.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By:   /s/ Rebecca J. Schwartz
          Rebecca J. Schwartz

2555 Grand Blvd.
Kansas City, Missouri  64108
Telephone:  816.474.6550
Facsimile:  816.421.5547

ATTORNEY FOR DEFENDANT
PFIZER, INC.

- 3 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2017, I filed Defendant Pfizer Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint with the Clerk of Court using the ECF system which will send notice of such filing to all parties of record.

By:  ___/s/ Rebecca J. Schwartz_____

8127564 v1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| HEALTH ONE MEDICAL CENTER, EASTPOINTE P.L.L.C., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 5:16-cv-13815 |
| MOHAWK, INC. d/b/a MOHAWK MEDICAL, BRISTOL-MYERS SQUIBB COMPANY, and PFIZER INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT PFIZER INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

RELEVANT FACTS ALLEGED IN PLAINTIFF'S COMPLAINT ........................ 3

APPLICABLE LEGAL STANDARD .................................................................... 5

ARGUMENT ..................................................................................................... 8

    A.    The Complaint Fails To Plausibly Allege That Pfizer Violated the TCPA. ........... 8

        1.    The Complaint does not meet the standard imposed by *Twombly* and *Iqbal*. ...................................................................................... 8

        2.    The mere fact that Pfizer manufactured a product that may have been listed for sale by Mohawk does not make it the "sender" of the faxes at issue, and is not an adequate basis to hold Pfizer liable under the TCPA. 11

    B.    The Complaint Fails To State A Plausible Claim For Conversion As Against Pfizer. ................................................................................... 19

CONCLUSION ................................................................................................ 21

8116970 v2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*,
  329 F. Supp. 2d 789 (M.D. La. 2004) .................................................................................18

*Aroma Wines & Equip. Inc. v. Columbia Distribution Services, Inc.*,
  497 Mich. 337 (2015) .........................................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... *passim*

*Bais Yaakov v. Varitronics, LLC*,
  No. 14-5008, 2015 WL 1529279 (D. Minn. Apr. 3, 2015) ..............................................15, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................5, 6, 11

*Brady v. Chase Home Fin., LLC*,
  No. 1:11-CV-838, 2012 WL 1900606 (W.D. Mich. May 24, 2012) ........................................6

*Cin-Q Auto, Inc. v. Buccaneers Ltd. P'ship*,
  No. 8:13–cv–01592–AEP, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014) .....................16, 17

*City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.* ...........................................................17

*Comprehensive Health Care Systems of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd. et al.*,
  No. 5:16CV2183, 2017 WL 27263 (N.D. Ohio Jan. 3, 2017) ........................................ *passim*

*Eyman v. Repicky*,
  No. 1:11 CV 1830, 2011 WL 5878398 (N.D. Ohio Nov. 11, 2011) ..................................7, 11

*G.M. Sign v. Stergo*,
  681 F. Supp. 2d 929 (N.D. Ill. 2009) ....................................................................................20

*Garrett v. Rangle Dental Lab.*,
  No. 10 C 1315, 2010 WL 3034709 (N.D. Ill. Aug. 3, 2010) .................................................20

*Harris v. Mexican Specialty Foods, Inc.*,
  564 F.3d 1301 (11th Cir. 2009) ............................................................................................18

*Heyne v. Metro Nashville Pub. Sch.*,
  655 F.3d 5556 (6th Cir. 2011) ................................................................................................6

*Imhoff Investment, L.L.C. v. Alfoccino, Inc.*,
    792 F.3d 627 (6th Cir. 2015) ...................................................................14

*Reo v. Carribean Cruise Line, Inc.*,
    No. 1:1:14 CV 1374, 2016 WL 1109042 (N.D. Ohio Mar. 18, 2016)........................................6

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)...................................................................18

*Siding and Insulation Co. v. Alco Vending, Inc.*,
    822 F.2d 886 (6th Cir. 2016) ...................................................................14

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*,
    633 F. Supp. 2d 610 (N.D. Ill. 2009) ...................................................................20

*Swartz v. Oracle Corp.*,
    787 F. Supp. 2d 686 (N.D. Ohio 2011)...................................................................7

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ...................................................................7

**Statutes**

Michigan Comp. Laws § 600.291(a)(1)(a) ...................................................................19

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.*............................................. *passim*

**Rules**

Fed. R. Civ. P. 8(a)(2)...................................................................7, 10

Fed. R. Civ. P. 12(b)(6)...................................................................2, 3, 5, 11

**Other Authorities**

47 C.F.R. § 64.1200(f)(10) ...................................................................11, 12, 14

8116970 v2

## INTRODUCTION

On February 15, 2017, plaintiff Health One Medical Center, Eastpointe P.L.L.C. ("Plaintiff") amended its Complaint to add Pfizer, Inc. ("Pfizer") and Bristol-Myers Squibb Company ("Bristol-Myers") as defendants in this putative nationwide class action claiming violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq*. and common law and statutory conversion. Plaintiff's First Amended Class Action Complaint (the "Complaint"), like its predecessor, is based on Plaintiff's alleged receipt of two single-page faxes physically sent by defendant Mohawk, Inc. ("Mohawk").  Plaintiff has already obtained individual default judgment against Mohawk and moved for a damages award against it at the statutory maximum, plus attorneys' fees, for a total of $13,513.75. (*See* Dkt. No. 27 at 2-3).

Notwithstanding its litigation success against Mohawk, Plaintiff now seeks to hold Pfizer liable for those *same* damages.  Yet Plaintiff's Complaint alleges *no* facts showing any action (or inaction) on the part of Pfizer that could lead to liability under its TCPA or conversion causes of action.  Plaintiff does not allege the existence of *any* business relationship between Pfizer and Mohawk.  Nor does it allege that Pfizer created, reviewed, approved, or sent the faxes at issue, or that that Pfizer authorized or in any way caused Mohawk to send those faxes. Furthermore, Plaintiff does not allege that Pfizer knew Mohawk was going to send

8116970 v2

– or that it had sent – the faxes at issue; does not specifically allege that Pfizer manufactured or supplied the "Depo Medrol" product described in those faxes; and does not allege that Pfizer acted in any other way that would subject it to TCPA liability.

Indeed, beyond statutory recitations and conclusory assertions that are plainly insufficient pleading after *Twombly* and *Iqbal*, the only theory of TCPA liability in Plaintiff's Complaint with even a shred of factual support is that Pfizer might be liable to Plaintiff simply for having manufactured and released into the stream of commerce a product that was later *purportedly* named in the faxes sent to Plaintiff— and this notwithstanding the fact that those faxes include no reference to Pfizer, its product's registered trademark, or its product's image.  The absurd idea that liability for statutory damages could possibly accrue against a product manufacturer under such circumstances has been roundly rejected by numerous courts, including another within the Sixth Circuit that recently considered a virtually identical factual scenario.  The theory should likewise be rejected here.

Plaintiff's state law conversion claims must likewise be dismissed under Rule 12(b)(6).  They fail for the same reason Plaintiff's TCPA claim fails: Plaintiff has alleged no facts that would establish that Pfizer wrongfully sent the fax that allegedly resulted in the conversion damages Plaintiff now claims (i.e., loss of the

use of the fax machine, toner, paper, and employee time associated with reviewing the two single page faxes).

Because Plaintiff's Complaint against Pfizer fails to state a claim upon which relief may be granted, it should be dismissed in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## RELEVANT FACTS ALLEGED IN PLAINTIFF'S COMPLAINT

Plaintiff alleges that it received two faxes in violation of the TCPA. (Compl., Dkt. 21, at ¶2.)  The faxes at issue (Compl. Exs. A-B (Dkt. Nos. 21-1 and 21-2)) do not mention Pfizer by name, do not identify a Pfizer product by a registered trademark name, and do not contain any image of a Pfizer product.  (*See id.*)  Each fax lists about a dozen different products being offered for sale by Mohawk to fax recipients, including one product described simply as "DEPO MEDROL 80 MG/ML VIAL 5ML."  Plaintiff's Complaint therefore accurately alleges that the faxes "provide[] information about the availability  . . . of pharmaceuticals purportedly *offered for sale by Mohawk*, and *methods for contacting Mohawk* to purchase" the products listed.  (Compl. ¶¶17, 18.)  The faxes identify methods of payment accepted by Mohawk for purchases made from it, and offer free shipping from Mohawk on certain orders.  (*See* Compl. Exs. A-B.)

The faxes also prominently feature not only Mohawk's name, address, and logo, but also its website (www.mohawkmedical.com), email ordering address

(order@mohawkmedical.com), fax number , and toll-free phone number. (*See* Compl. Exs. A-B.) The faxes do not provide any way to contact or to purchase products from Pfizer or any entity other than Mohawk. (*Id.*) The faxes also list products indisputably *not* manufactured by Pfizer. (*Id.*)

One of the handful of Plaintiff's allegations that mention Pfizer specifically offers the bare assertion that "Depo Medrol . . . is a drug of defendant Pfizer." (Compl. ¶21.) But Mohawk's faxes do not specifically identify Pfizer's methylprednisolone acetate injectable suspension product "DEPO-MEDROL®" (*see* Compl. Exs. A-B), and even if the faxes had used that brand name, it would not preclude the possibility that Mohawk was actually selling generic equivalents.[1] Plaintiff's Complaint does not allege that the specific product described and offered for sale by in the faxes by Mohawk, "DEPO MEDROL 80 MG/ML VIAL 5ML," was manufactured by Pfizer.[2] Plaintiff also alleges no facts that would establish that Mohawk acquired the "DEPO MEDROL 80 MG/ML VIAL 5ML" product it was offering for sale from Pfizer. In fact, Plaintiff's Complaint alleges

---

[1] Secondary wholesalers like Mohawk frequently ship generic equivalents rather than brand name drugs.
[2] The FDA's "Orange Book" listings confirm that Pfizer's DEPO-MEDROL® is now off patent, meaning that other manufacturers are permitted to manufacture and sell generic equivalents. *See, e.g.* https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_No=004&Appl_No=011757&Appl_type=N (showing no unexpired patents for METHYLPREDNISOLONE ACETATE (DEPO-MEDROL) INJECTABLE 80MG/ML).

no facts that suggest the existence of *any* business or agency relationship whatsoever—or even contact of any kind—between Mohawk and Pfizer.

With respect to its conversion claims, Plaintiff alleges that by faxing two unsolicited single page documents (Compl. Exs. A-B) to Plaintiff, "Defendants'" converted Plaintiff's fax machine, as well as its paper, toner, and employee time, to "Defendants'" own use, resulting in the misappropriation thereof.  (Compl. ¶64.) Plaintiff further alleges that "Defendants' junk faxes" caused it to "lose paper and toner consumed in the printing of Defendants' faxes" and "wasted Plaintiff's valuable time, requiring an employee to receive and review Defendants' unlawful fax, interrupting Plaintiff's privacy interests in being left alone."  (*Id.* at ¶61.)

Ultimately, Plaintiff's Complaint contains no factual allegations that support its conclusive (and yet non-specific) assertion that "Pfizer is liable for the fax advertisements at issue because its goods and services are advertised on the faxes, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to the violation, or the faxes were sent on its behalf," (Compl. ¶59), and no factual allegations supporting its conversion claims, which require evidence of wrongful conduct leading to the conversion of Plaintiff's assets to Defendant's own use.

## APPLICABLE LEGAL STANDARD

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A formulaic recitation of the elements of a cause of action will not do," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 5556, 564 (6th Cir. 2011) ("Legal conclusions that are "masquerading as factual allegations" are not sufficient) (quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Quotations or recitation of statutory language are likewise no substitute for factual allegations and are insufficient to support a claim. Thus, to survive a motion to dismiss a TCPA claim, a plaintiff must do more than recite statutory language. *See e.g. Reo v. Carribean Cruise Line, Inc.*, No. 1:1:14 CV 1374, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016) ("This Court is persuaded by the majority of courts who require some additional factual allegations . . . in addition to parroting the language of the statute."); *see also Brady v. Chase Home Fin., LLC*, No. 1:11-CV-838, 2012 WL 1900606, at *10 (W.D. Mich. May 24, 2012)

(dismissing claim under Michigan Collection Practices Act where plaintiff's allegations "merely parrot[ed] certain provisions of the statute").

Rule 8 likewise requires that a plaintiff advance specific factual allegations sufficient to put *each* defendant on notice of the claims against it. *See Eyman v. Repicky*, No. 1:11 CV 1830, 2011 WL 5878398, at *3 (N.D. Ohio Nov. 11, 2011) (granting motion to dismiss "shotgun pleading" where, *inter alia*, the plaintiff failed to "differentiate among any of the . . . defendants, simply asserting that their combined acts or failures to act resulted in the injury to plaintiff"); *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (identifying as an impermissible "shotgun pleading" complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions").

Finally, Plaintiff cannot rely on the claim that discovery will later provide facts revealing some avenue to recovery against Pfizer—that approach has been expressly rejected by the Supreme Court. *See Iqbal* at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see also Swartz v. Oracle Corp.*, 787 F. Supp. 2d 686, 693 (N.D. Ohio 2011) (noting that while 'general factual allegations of injury resulting from the defendant's conduct may suffice . . . it is still necessary to include some 'well-

7

pleaded factual allegations' to support the claim) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## ARGUMENT

**A.    The Complaint Fails To Plausibly Allege That Pfizer Violated the TCPA.**

### 1.    The Complaint does not meet the standard imposed by *Twombly* and *Iqbal*.

In Count I, Plaintiff alleges that "Defendants" violated the TCPA "by sending an advertisement by facsimile . . . to Plaintiff and the other class members without their prior express invitation or permission."  Compl. at ¶ 44; *see also id.* at ¶¶ 1, 2, 23.  Plaintiff also alleges that "Defendants" violated the TCPA by failing to include a proper opt-out notice or contact information on the faxes at issue.  *See id.* at ¶¶ 45-49.

The Complaint contains no factual allegations showing any specific action or inaction by Pfizer that would support Plaintiff's claims against the company. Plaintiff does not allege that Pfizer physically sent the faxes at issue.[3]  Nor does Plaintiff specifically allege that Pfizer played any role at all in the creation or transmission of the faxes.  Instead, it repeatedly lumps all "Defendants" together when describing alleged wrongdoing.  *See, e.g.*, Compl. ¶¶14  ("*Defendants* sent

---

[3] Prior to filing its Amended Class Action Complaint naming Pfizer a defendant (Dkt. No. 21), Plaintiff had represented in at least four separate court filings that defendant Mohawk Medical, Inc. sent the faxes at issue.  *See* Original Compl., Dkt. No. 1, at ¶1,  Pl.'s Resp. to Order to Show Cause, Dkt. No. 15, at ¶1; Plaintiff's Status Report, Dkt. No. 17, at ¶1, Plaintiff's Motion for Default, Dkt. No. 19, at ¶1.

8

advertisements by facsimile to Plaintiff...."), 18 ("Exhibit B is a one-page document *Defendants* sent by fax promoting Mohawk's August prices on pharmaceuticals and vaccines."); 47 ("The purported opt-out notice provided by *Defendants* is not 'conspicuous'...."); 61 ("*Defendants'* actions damaged Plaintiff and other class members.") (emphasis added).  But other than a shift to the plural, these allegations are no different from those contained in Plaintiff's original Complaint naming Mohawk as the sole defendant.  *See* Dkt. No. 1.

Plaintiff's Complaint lacks any factual allegations that suggest the existence of *any* relationship between Pfizer and Mohawk, let alone a business or agency relationship that could somehow be used to plausibly imply that the two entities were working in cooperation to send the faxes allegedly received by Plaintiff.  The mere fact that a description that Plaintiff claims represents a "drug of defendant Pfizer" appeared on the faxes at issue is insufficient to support even an inference that a business relationship exists between it Pfizer and Mohawk, and there is no factual allegation identifying Pfizer as the source of that particular product.[4]

Plaintiff does not allege that Pfizer was *aware* that Mohawk had sent the faxes, or that Pfizer in any way caused, authorized or consented to Mohawk doing so.  Nor does Plaintiff  allege that Pfizer sold products directly to Mohawk, that Pfizer benefited from Mohawk's sale of Pfizer products (if any), that Pfizer knew

---

[4] Even licensed pharmaceutical wholesalers can and do obtain products to resell from non-manufacturer sources, including other wholesalers, and sometimes even purchase unexpired overstock from retail pharmacies in order to then resell it.

that Mohawk had (or claimed to have) Pfizer-manufactured products in stock, or that Pfizer knew that Mohawk was offering Pfizer-manufactured products for sale (if indeed Mohawk actually was). Moreover, while Plaintiff alleges that Pfizer "knew or should have known" that Plaintiff and the other class members had not given express invitation or permission for "Defendants" or anyone else to fax advertisements to Plaintiff, *see* Compl. ¶60, Plaintiff pleads no facts to establish that Pfizer knew *anything* about Mohawk, Mohawk's business, or the customers Mohawk sought to reach when it sent the faxes at issue.

Plaintiff's conclusory assertion that, in effect, Pfizer did *something* to violate the TCPA, which is backed only by a laundry list of the possible legal elements that *might* lead to such liability, is woefully deficient. *See* Compl. ¶59 ("Defendant Pfizer is liable for the fax advertisements because its goods and services are advertised on the faxes, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, or the faxes were sent on its behalf."). Plaintiff cannot rely on such conclusory statements regarding Pfizer's supposed liability without factual allegations to support them. Rule 8 "demands more than an undadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 679 (citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

Moreover, Plaintiff's allegations that the faxes "were sent on [Pfizer's] behalf," Compl. ¶59, and that Pfizer "is a sender of the fax advertisements because its goods or products are promoted in the faxes," *id.*, are not factual allegations at all, but merely recitations of 47 C.F.R. § 64.1200(f)(10), which defines the term "sender" as used in the TCPA. And, because Plaintiff fails to provide any supporting factual allegations supporting its claim, quotations of the regulation are insufficient to survive a Rule 12 motion. Indeed, the very few factual allegations that Plaintiff *does* make support only the conclusion that Mohawk is solely responsible for the transmission of the faxes. *See* Compl. at ¶¶ 17-19. Plaintiff's attempt to avoid this fact by lumping the (now three) "Defendants" together does not relieve Plaintiff of the obligation to plead specific facts about each of them. *See Repicky*, 2011 WL 5878398, at *3.

Absent any factual allegations showing that Pfizer played any role in, or was even aware of, the faxes being sent, Plaintiff cannot plausibly claim that Pfizer is liable under the TCPA. *Twombly*, 550 U.S. at 570*; Iqbal*, 556 U.S. at syllabus.

    **2.**     **The mere fact that Pfizer manufactured a product that may have been listed for sale by Mohawk does not make it the "sender" of the faxes at issue, and is not an adequate basis to hold Pfizer liable under the TCPA.**

Count I of the Complaint against Pfizer fails for an additional reason. Stripped of its conclusory assertions and statutory quotations, Plaintiff's only factually-supported theory of liability is this: because Pfizer manufactured DEPO-

MEDROL®, it is responsible for the transmission of any fax bearing words that appear to refer to that product, regardless of whether Pfizer participated in creating, approved of, or was even aware of such faxes.  This sweeping theory of liability and the "absurd" results it would garner has been expressly rejected by numerous courts, and should be rejected here.

The Code of Federal Regulations defines a TCPA fax "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the advertisement."  47 C.F.R. § 64.1200(f)(10).  Plaintiff's attempt to stretch this definition to encompass entities lacking any involvement in, or knowledge of, an *unrelated* third party's transmission of faxes containing only words *may* refer to those entities' products would lead to results never contemplated by Congress and would pose significant due process concerns.

To illustrate the problem, this Court need look no further than a recent and nearly perfectly on-point decision from the nearby Northern District of Ohio, *Comprehensive Health Care Systems of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd. et al.*, No. 5:16CV2183, 2017 WL 27263 (N.D. Ohio Jan. 3, 2017), which involved the same counsel representing Plaintiff in this case.  The *Comprehensive Health Care* plaintiff had alleged that defendant Vitaminerals VM ("VM") sent out faxes providing contact information for itself and urging

12

recipients to purchase products from it, including "BioFreeze," a product prominently featured on the faxes and manufactured by another defendant, Hygenic Corporation ("Hygenic").  Hygenic moved to dismiss plaintiff's complaint, including both its TCPA and conversion claims, arguing that plaintiff had not sufficiently stated a claim for which Hygenic could be held liable under the TCPA as a "sender" given "the absence of any factual allegations indicating that it either transmitted the faxes, authorized [VM] to do so, or even knew of the faxes." *Id*. at *1.

The primary liability allegation against Hygenic was nearly identical to the one asserted against Pfizer in this case at Compl. ¶59; namely, that Hygenic was liable because "they sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, [or] the faxes were sent on Hygenic's behalf . . . ."  *Id*. at *2.  Hygenic argued – just as Pfizer does here – that because the Complaint lumped defendants together and that the only allegations against Hygenic were merely conclusory allegations and statutory quotations, the allegations were insufficient to state a claim, even if faxes at issue in that case bore a picture of Hygenic's product.  *See id.* at *4.

The district court agreed and granted Hygenic's motion to dismiss with prejudice.  It reasoned that while the FCC had modified the regulatory definition of a fax "sender" to conclude not only the entity on whose behalf a fax was sent, but

also the entity whose goods or services are advertised, and even though Hygenic's BioFreeze products appeared in VM's advertisement, VM's faxes themselves "make clear that the goods and services being advertised are those of VM." *Id.* at *5. The court cited as factors contributing to its conclusion that: (1) the faxes urged recipients who wanted to purchase the products listed on the fax "at a special price" to contact VM, (2) provided VM's address and toll-free number, and (3) listed products not manufactured by Hygenic that VM purported to sell. *See id.* Thus, "the faxes [held] out VM as a seller of products, i.e., *its* goods and services are advertised and promoted. In short, VM, as alleged in the Amended Complaint, fits the bill of 'sender' as that term is defined in 47 C.F.R. § 64.1200(f)(10)."[5] *Id.* (emphasis added).

The *Comprehensive Health Care* court also recognized that assigning liability to Hygenics under the facts of that case would be an "absurd" result, in that it would be "akin to a court finding that the vending machine company's advertisement creates TCPA liability for the soft drink companies whose drinks are sold in the vending machines and promoted in the ads because the soft drink companies manufacture the drinks and benefit when customers buy their products."

---

[5] The Sixth Circuit has yet to squarely address this particular question of "sender" liability. The district court in *Comprehensive Health Care* took care to distinguish the Sixth Circuit TCPA cases plaintiff there tried to rely upon, noting that the Sixth Circuit's "sender" decisions, unlike that case (or this one) all involved some alleged business relationship between the physical sender of the offending faxes and the entity that retained it to send them. *See id.* at *5, discussing *Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.2d 886 (6th Cir. 2016) and *Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015).

*Id.* at *5. It continued: "[i]f this were the case, TCPA liability would automatically attach to any manufacturer or distributor of any product promoted in an improperly sent fax advertisement. The history and language of the TCPA and the pertinent regulations do not create such liability; nor does binding case law or common sense." *Id.*

Pfizer's position in this case is nearly identical to Hygenic's in *Comprehensive Health Care*, although the faxes at issue in this case here arguably provide even *less* potential basis for TCPA liability. Pfizer's products, after all, are not pictured, *or even correctly named*, on Mohawk's faxes in the way Hygenic's product was on VM's faxes.

Other examples of courts dismissing similarly-pled TCPA and other claims against product manufacturer defendants in fax cases abound. In *Bais Yaakov v. Varitronics, LLC*, No. 14-5008 ADM/FLN, 2015 WL 1529279 (D. Minn. Apr. 3, 2015), for example, the plaintiff brought suit against a manufacturer and its authorized dealer arising out of its receipt of unsolicited faxes. The manufacturer moved to dismiss, and the plaintiff argued that, *inter alia*, the manufacturer was liable under the TCPA simply because its product had been advertised via unsolicited faxes—irrespective of the manufacturer's consent to or knowledge of the faxes. *Id.* at *4. The court rejected the plaintiff's argument, finding that such an interpretation of the term "sender" under the federal regulations "would subject

parties to TCPA liability that had no involvement whatsoever in transmitting a fax advertisement," and could also "give rise to 'sabotage liability.'" *Id.* Noting that such a "broad scope of liability was certainly not contemplated by Congress when the TCPA was passed," the court concluded that the defendant "is not subject to TCPA liability simply because the [faxes] promote [its] products." *Id.* at *4-5.

Other courts reaching the same conclusion have offered vivid illustrations of the unreasonableness of plaintiffs' "sender" liability arguments. In *Cin-Q Auto, Inc. v. Buccaneers Ltd. P'ship*, No. 8:13–cv–01592–AEP, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014), the Tampa Bay Buccaneers NFL team hired FaxQuom to send faxes advertising Buccaneers tickets. FaxQuom subsequently broadcast faxes—either directly or through other entities—to nonconsenting businesses, one of whom sued the team and FaxQuom. As in this case, the plaintiff there argued that even if the faxes were not transmitted on the team's behalf, "the mere fact that its goods or services are advertised in the faxes at issue" was sufficient to establish liability under the TCPA. *Id.* at *4.

The district court in *Cin-Q Auto* emphatically rejected this notion, holding that "plaintiff's interpretation leads to absurd results which cannot possibly follow from a permissible construction of the TCPA or from an agency's reasonable interpretation of its regulations." *Id.* at *6. The court demonstrated the unreasonableness of this view with two examples: "[A] rabid Tampa Bay

16

Buccaneers fan . . . [could] trigger *per se* liability for the organization under the TCPA by gratuitously, and without directive from or notice to the organization, promoting season ticket sales via fax;" and "[t]he same could be true of a random individual in Boston, mind brewing with *scienter*, who works to implicate the New York Yankees by advertising their season tickets." *Id.* In other words, an entity "is not merely a *per se* sender because [its] advertising is included in the faxes at issue—an action or inaction that sets the causal chain in motion must, in some way, be attributable to the party whose goods or services were advertised." *Id.* at *7.

The *Cin-Q Auto* court's common-sense reasoning has been echoed by still other courts. In *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, the court quoted *Cin-Q Auto* and ruled that "universal liability for complete inaction was not contemplated by Congress in passing the TCPA and does not appear to have been contemplated by the FCC in crafting and interpreting its regulations." No. 13-4595 (NLH/JS), 2015 WL 5769951, at *10 (D.N.J. Sept. 29, 2015). Likewise, in *Paldo Sign and Display Co. v. Wagener Equities, Inc.*, the Seventh Circuit rejected "a reading of the regulations that would impose strict liability on a company whose goods or services were advertised," as it "would lead to absurd and unintended results." 825 F.3d 793, 797 (7th Cir. 2016). The *Paldo* court correctly observed that, under the plaintiff's theory, if the defendant's competitor "sent out ten

thousand fax advertisements promoting [the defendant's] services, the resulting lawsuit could bankrupt [the defendant] even though [it] played no part in sending the faxes." *Id.*

*Comprehensive Health Care*, *Bais Yaakov*, *Cin-Q-Auto*, *City Select*, and *Paldo* dictate the necessary result here: dismissal. The Complaint contains no factual allegations regarding any relationship, at all, between Mohawk and Pfizer, no allegation that Pfizer knew about or consented to Mohawk's sending the faxes, or even that Mohawk had any ability to prevent their transmission (physically or contractually).[6]   In short, Plaintiff alleges no *action or inaction*, by Pfizer that could subject it to TCPA liability, and Claim I should be dismissed.

---

[6] Even assuming the faxes at issue *were* intended by Mohawk to refer to Pfizer's product, DEPO-MEDROL®, if the TCPA to be read so as to ascribe liability to Pfizer simply because Pfizer manufactured the product advertised, it would violate the Due Process Clauses of the Fifth and Fourteenth Amendments. "Due process requires 'that the law must be one that carries an understandable meaning with legal standards that courts must enforce.'"  *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (quoting *Giaccio v. State of Pennsylvania*, 382 U.S. 399, 403 (1966)).   Where a statute "either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application," that statute "violates the first essential of due process of law." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).   Moreover, "statutory penalties may not be 'so severe and oppressive as to be wholly disproportional to the offense and obviously unreasonable.'" *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 809 (M.D. La. 2004) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919)).

**B.      The Complaint Fails To State A Plausible Claim For Conversion As Against Pfizer.**

Common law conversion is "'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'"  *Aroma Wines & Equip. Inc. v. Columbia Distribution Services, Inc*., 497 Mich. 337, 346 (2015) (citations omitted).   The tort thus "secures a right to personal property by allowing someone wrongfully deprived of his or her property to recover either that property or monetary damages, or both, for the wrongful deprivation.   *Id*. at 348.   In Count II of its Complaint for conversion, Plaintiff conclusorily alleges that "Defendants improperly and unlawfully converted the class's fax machines, paper, toner, and time to Defendants' own use."  Compl. at ¶64.

A plaintiff seeking treble damages under for *statutory* conversion under Michigan Comp. Laws § 600.291(a)(1)(a), as Plaintiff does here in its Count III, must further "present[ ] evidence that the conversion was to defendant's 'own use.'"  *See Aroma Wines*, 97 Mich. at 356.  Plaintiff's allegations with respect to Count III do nothing more than parrot the language of the statute:  "Defendants sent unsolicited faxes converting Plaintiff's fax machine, paper, toner, and employees' time for Defendants' own use."  *Id.* at ¶ 72.

Nowhere, however, does Plaintiff offer any factual allegations supporting its naked assertion that Pfizer *wrongfully* dispossessed Plaintiff or the putative class

members of property.  Indeed, and as noted *supra* in Section A, Plaintiff's factual allegations, together with the faxes themselves overwhelmingly support the conclusion that Mohawk is solely responsible for their transmission (and any conversion of toner and the like, if it occurred).  *See* Compl. at ¶¶ 17-19; Dkt. Nos. 21-1, 21-2.

In the absence of any factual allegations establishing that Pfizer committed an intentional or wrongful act, Counts II and III fail as matter of law and must be dismissed.  *See Iqbal*, 556 U.S. at 678 ("[W]here the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'"); *see also Comprehensive Health Care*, 2017 WL 27263 at *6.[7]

---

[7] Plaintiff's conversion claims fail for the additional and independent reason that they are barred by the doctrine of *de minimis non curat lex*, or "the law does not concern itself with trifles." *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 615 (N.D. Ill. 2009) (dismissing a conversion claim under the *de minimis* doctrine because the loss of paper and toner from an unsolicited fax was a trivial damage). Indeed, "the ancient maxim *de minimis non curat lex* might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax . . . ." *Id.* at 613 (citing *Rossario's Fine Jewelry, Inc. v. Paddocks Publications, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006)); *see also Garrett v. Rangle Dental Lab.*, No. 10 C 1315, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010) (holding that plaintiff's conversion claim failed because the alleged loss was *de minimis* and could be remedied by his TCPA claim); *G.M. Sign v. Stergo,* 681 F. Supp. 2d 929, 934–35 (N.D. Ill. 2009) (holding that plaintiff's conversion claim was barred by the *de minimis* doctrine and noting that the TCPA provided a cause of action for the

## **CONCLUSION**

For all the reasons stated herein, Plaintiff has failed to state a claim upon which relief may be granted, and its Complaint against Defendant Pfizer, Inc. should be dismissed in its entirety with prejudice.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By:   /s/ Rebecca J. Schwartz
        Rebecca J. Schwartz

2555 Grand Blvd.
Kansas City, Missouri  64108
Telephone:  816.474.6550
Facsimile:  816.421.5547

ATTORNEY FOR DEFENDANT
PFIZER INC.

---

grievance alleged in that claim, which statute plaintiff had invoked in its first claim).

8116970 v2

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2017, I filed Defendant Pfizer Inc.'s Brief in Support of Its Motion to Dismiss Plaintiff's First Amended Class Action Complaint the foregoing document with the Clerk of Court using the ECF system which will send notice of such filing to all parties of record.

By:   /s/ Rebecca J. Schwartz

8116970 v2