UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Health One Medical Center,
Eastpointe, P.L.L.C.,

        Case No. 16-cv-13815

        Plaintiff,

        Judith E. Levy
v.        United States District Judge

Bristol-Myers Squibb Company    Mag. Judge Stephanie Dawkins
and Pfizer, Inc.,    Davis

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [44, 45], DENYING AS MOOT PLAINTIFF'S <u>MOTION TO CERTIFY CLASS [3]</u>**

Before the Court are defendants Bristol-Myers Squibb Company and Pfizer, Inc.'s motions to dismiss the amended complaint (Dkts. 44, 45), and plaintiff's motion for class certification. (Dkt. 3.)

For the reasons set forth below, defendants' motions are granted, and plaintiff's motion is denied as moot.

I.   Background

Plaintiff Health One Medical Center, Eastpointe PLLC has filed a putative class action against defendants Mohawk, Inc., Bristol-Myers

Squibb Co. ("BMS"), and Pfizer, Inc., for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and acts constituting common law conversion and statutory conversion under Michigan law. (Dkt. 21.) Defendant Mohawk, Inc. never appeared, and the Court granted plaintiff's motion for a default judgment against that defendant. (Dkt. 20.)

On August 8, 2016, plaintiff received an unsolicited fax advertising several pharmaceutical products. (Dkt. 21-1 at 2.) On September 8, 2016, plaintiff received a second fax that also advertised several pharmaceutical products, including many of the products listed in the fax received in August. (Dkt. 21-2 at 2.)

The faxes promote various drugs, listing the item number, description, regular price and discounted price for the relevant month. (Dkts. 21-1, 21-2.) To order these drugs, the customer is directed to fax, call, or email order@mohawkmedical.com. (*Id.*) And each fax bears Mohawk Medical's name, address, website, and email address at the top. (*Id.*)

Defendant BMS produces Kenalog, and defendant Pfizer produces Depo Medrol, and both of these drugs were promoted in the August and

September faxes. (Dkt. 21 at 6.) Plaintiff alleges these defendants "sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, or the faxes were sent on its behalf." (*Id.* at 21–22.)

Plaintiff's first claim is that the faxes do not comply with the TCPA because there is no opt-out notice that meets the statutory and regulatory requirements. (Dkt. 21 at 18–20.) For these alleged TCPA violations, plaintiff seeks statutory and/or treble damages, an injunction, and any other costs and relief the Court deems just and proper. (*Id.* at 23–24.)

Plaintiff also claims that the faxes amount to common law and statutory conversion, MICH. COMP. LAWS § 600.2919a(1)(a).[1] When the faxes were sent, defendants allegedly converted plaintiff's fax machine, paper, toner, and employees' time for their own use. (Dkt. 21 at 24–27.) On this claim, plaintiff requests damages, punitive damages, attorney fees and costs, and all other relief the Court deems just and proper. (*Id.* at 26–27.)

---

[1] Plaintiff incorrectly cites MICH. COMP. LAWS § 2919(a)(1)(a), which addresses liability for individuals who damage land. MICH. COMP. LAWS § 2919a(1)(a) is the basis for a conversion claim.

3

## II. Legal Standard

Defendants have brought motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and BMS also argues the Court lacks personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Under Fed. R. Civ. P. 12(b)(2), "the party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). "To defeat [a motion to dismiss for lack of personal jurisdiction, a plaintiff] need only make a *prima facie* showing of jurisdiction." *Id.* And when a motion to dismiss for lack of personal jurisdiction is filed but no evidentiary hearing is held, "the court must consider the pleadings and affidavits in a light most favorable to the [nonmoving party—here, plaintiffs]." *Id.* (brackets in original).[2]

Under Fed. R. Civ. P. 12(b)(6), "[a] complaint must state a claim that is plausible on its face." *Johnson v. Moseley*, 790 F.3d 649, 652 (6th

---

[2] "An evidentiary hearing may be conducted if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution." *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013) (quoting *Amer. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). As set forth below, the allegations relevant to determining whether the Court has jurisdiction over defendant BMS are undisputed. Accordingly, the Court declines to exercise its discretion to hold an evidentiary hearing on this issue.

Cir. 2015). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a plaintiff must plead facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). And a court considering a motion to dismiss must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

### III. Analysis

Defendant Pfizer, Inc. argues plaintiff fails to state a claim for a TCPA violation, common law conversion, and statutory conversion. Defendant BMS also argues that plaintiff fails to state a claim, and that the Court lacks personal jurisdiction over it.

### *Whether Pfizer, Inc. Violated the TCPA*

Defendant Pfizer, Inc. argues it cannot be held liable because plaintiff alleges no facts showing (1) any action or inaction on its part; (2)

5

participation in the creation or transmission of the faxes; (3) a business relationship between Pfizer and Mohawk, Inc.; (4) Pfizer was aware that Mohawk sent the faxes; (5) Pfizer sold products to Mohawk or knew Mohawk was selling its products; or (6) Pfizer was aware of Mohawk. (Dkt. 44 at 16–18.) Defendant BMS makes these same arguments with respect to the TCPA claim against it. Assuming the Court has jurisdiction over BMS, the analysis below applies with equal force to BMS.

Under the TCPA, a "sender" who may be liable for violations of the act includes "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

In this case, plaintiff alleges that Pfizer, Inc. qualifies as a "sender" for several reasons because it actually sent the faxes and one of its products is listed in the faxes. But plaintiff also claims former defendant Mohawk, Inc. actually sent the faxes at issue. These faxes include references only to Mohawk, Inc., and instruct the recipient to contact Mohawk, Inc., not Pfizer, Inc. And other than the allegation that Pfizer, Inc. sent the fax, plaintiff offers no other allegations or facts to justify this allegation. Collectively, the conclusory allegations by plaintiff,

6

undermined by the plain text and images of the faxes, do not plausibly suggest that Pfizer, Inc. played a role in sending the faxes. *See Creelgroup, Inc. v. NGS Am, Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) ("when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations").

Additionally, because plaintiff has not alleged any action or relationship between defendants that would raise an inference that Pfizer knew Mohawk was sending the faxes, plaintiff has not sufficiently pleaded that defendant "caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, [or] the faxes were sent on [their] behalf." *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, Case No. 16-cv-2183, 2017 WL 27263, at *5 (N.D. Ohio Jan. 3, 2017) (defendant not liable as "sender" when plaintiff alleged nothing other than defendant manufactured product listed in fax).

Plaintiff argues that it need not allege more than that defendant's products are listed in the advertisements because a sender includes the entity "whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). (Dkt. 47 at 10–

7

11.) To support this argument, plaintiff relies on *Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016), and *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015).

But these cases are insufficient. In each of those cases, plaintiffs alleged that the defendants whose products were advertised had hired an advertising agency that sent the faxes to plaintiffs, and defendants acknowledged that they had hired the ad agency. *Siding and Insulation Co.*, 82 F.3d at 888, 900–01 (discussing business relationship between defendant and ad agency and allegations supporting liability before remanding for application of correct legal standard); *Imhoff Inv., LLC*, 792 F.3d at 629–30, 635 (plaintiff raised question of material fact that defendant was "sender" because it hired agency to send the faxes at issue). That is not the case here, where plaintiff has not alleged defendant advertised in Michigan or had any knowledge of, relationship with, or contact with Mohawk, Inc.

Plaintiff also relies on *Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 207 F. Supp. 3d 746 (E.D. Mich. 2016). Again, this case is not on point. The *Vinny's Landscaping, Inc.* court addressed whether plaintiffs had alleged sufficient facts for a holding company to be liable

8

for acts of its subsidiary. The court stated that at this "early stage, courts should take into account economic or logistical circumstances that prevent [plaintiffs] from obtaining evidence supporting [their] claims and adjust the plausibility threshold appropriately." *Id.* at 752–53. Without additional analysis, the court denied the motion to dismiss. That said, plaintiffs in that case alleged a relationship between the holding company and subsidiary that directly sent the fax to plaintiffs, and alleged that all defendants received revenue and benefited from the faxes. Here, plaintiff has alleged no such relationship or set forth how it believes defendant benefits from the faxes.

The Sixth Circuit has not addressed whether an advertisement that includes an entity's products is sufficient for that entity to be liable as a sender. And while this reading of the regulation may be plausible, the Seventh Circuit has rejected it, as has the *Comprehensive Health Care Systems of Palm Beaches, Inc.* court. In *Paldo Sign and Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793 (7th Cir. 2016), the Seventh Circuit held that a literal interpretation of the regulation "would lead to absurd and unintended results" by vastly expanding the scope of liability, and

9

held instead that an entity "must have done something to advertise goods or services." 825 F.3d at 797. As the court wrote:

> For example, if a competitor of Wagener Equities sent out ten thousand unsolicited fax advertisements promoting Wagener's services, the resulting lawsuit could bankrupt Wagener even though Wagener played no part in sending the faxes.

*Id.*

A similar concern was voiced by the *Comprehensive Health Care Systems of Palm Beaches, Inc.* court, which held plaintiff had insufficiently pleaded a violation by alleging only that defendants' products were listed on the faxes: "If this were the case, TCPA liability would automatically attach to any manufacturer or distributor of any product promoted." 2017 WL 27263, at *5. And such a broad scope could encourage, as the Seventh Circuit noted, "sabotage liability." *Id.* The reasoning of these cases is persuasive, and plaintiff's expansive reading of the statute in this case is not justified. Accordingly, plaintiff's allegation that Pfizer's product is listed on the faxes is insufficient to sustain the TCPA claim.

Finally, plaintiff alleges that defendant is liable because the faxes were sent on its behalf. Under the "on whose behalf" standard, which is

10

"a middle ground between strict liability and vicarious liability," courts consider several factors, including "the degree of control that the [] entity exercised over the preparation of the faxes, whether the [] entity approved the final content of the faxes as broadcast, and the nature and term of the contractual relationship" between the parties. *Siding and Insulation Co.*, 822 F.3d at 898. Plaintiff offers no allegations that would allow the Court to infer that any of these factors weigh in plaintiffs' favor.[3] Accordingly, defendant's motion to dismiss the TCPA claim is granted.

### *Whether Pfizer, Inc. Is Liable for Conversion or Statutory Conversion*

Defendant Pfizer, Inc. argues plaintiff has failed to state a claim for conversion or statutory conversion because the facts show that Mohawk, Inc. sent the faxes and no other allegations suggest Pfizer, Inc. committed an intentional or wrongful act. (Dkt. 44 at 27–28.)

In Michigan, common law conversion includes "any distinct act of dominion wrongfully exerted over another's personal property in denial

---

[3] Plaintiff claims that defendant is "directly liable," suggesting it is not actually raising an "on whose behalf" claim despite the language of the allegation. (Dkt. 21 at 4 (para. 14).) It has been addressed here out of an abundance of caution.

11

of or inconsistent with his rights therein." *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 351–52 (2015). It is an "intentional tort in the sense that the converter's actions are willful, although the tort can be committed unwittingly if unaware of the plaintiff's outstanding property interest." *Paige v. Paige*, No. 283811, 2009 WL 2426261, at *2 (Mich. Ct. App. Aug. 6, 2009) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 291 (1992)).

Statutory conversion under MICH. COMP. LAWS § 600.2919a(1)(a) permits a plaintiff to recover treble damages, costs and attorney fees that accrue as the result of "another person's stealing or embezzling property or converting property to the other person's own use." To plead this cause of action, a plaintiff must plead the same elements as common law conversion, and also that the property converted was "to defendant's own use." *Aroma Wines & Equip., Inc.*, 497 Mich. at 356. To satisfy the "own use" element, a plaintiff must allege that "the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.* at 359.

12

A party may be liable directly for conversion, and also "by actively aiding or abetting or conniving with another in such an act. Indeed, one may be liable for assisting another in a conversion though acting innocently." *Prime Fin. Servs. LLC v. Vinton*, 279 Mich. App. 245, 276 (2008) (internal quotation and citation omitted).

Here, as set forth above, plaintiff has failed to plausibly allege that Pfizer, Inc. sent or requested the faxes be sent or had any knowledge of or relationship with Mohawk, Inc. Thus, plaintiff has failed to plead that Pfizer, Inc. intended to exercise dominion over plaintiff's property or innocently or intentionally aided or abetted Mohawk, Inc. in conversion. Accordingly, the common law and statutory conversion claims are dismissed.

### *Whether the Court Lacks Personal Jurisdiction over BMS*

Defendant BMS argues plaintiff has failed to state a claim and that the Court lacks personal jurisdiction over it.

"To determine whether personal jurisdiction exists . . . , federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Reynolds v. Int'l*

13

*Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir. 1994)). Plaintiffs may establish jurisdiction either generally or specifically. *Nationwide Mut. Ins. Co. v. Tryg Int'l Co.,* 91 F.3d 790, 793 (6th Cir. 1996). Here, plaintiff asserts both.

"General personal jurisdiction is jurisdiction for all purposes. MICH. COMP. LAWS § 600.711 provides for general personal jurisdiction over a corporation that is (1) incorporated in Michigan, (2) has consented to jurisdiction in Michigan, or (3) carries on a "continuous and systematic part of its general business within the state." *Hige v. Turbonetics Holdings, Inc.*, 662 F. Supp. 2d 821, 827 (E.D. Mich. 2009) (quoting MICH. COMP. LAWS § 600.711).

It is undisputed that BMS is not incorporated in Michigan, and has not consented to the jurisdiction of this court. Thus, this Court can exercise jurisdiction pursuant to MICH. COMP. LAWS § 600.711 only if defendant carries on a continuous and systematic part of its general business within Michigan. *Hige*, 662 F. Supp. 2d at 827.

Here, "[t]here are no allegations that the defendant was physically present in the state, retained agents to represent it here, solicited sales or other business here on a regular basis, or derived any substantial

revenue from business conducted in the state." *Salom Enter., L.L.C. v. TS Trim Indus.*, 464 F. Supp. 2d 676, 682 (E.D. Mich. 2006). Instead, plaintiff has pleaded only that BMS was licensed in Michigan and "transacted business" without describing the extent or nature of that business. Even assuming that the business at issue is the sale of defendant's products in Michigan, plaintiff fails to plead the extent of such business. These allegations are therefore insufficient to establish that defendant carries on continuous and systematic conduct within the State. Accordingly, the Court lacks general jurisdiction over defendant.

Next, plaintiff argues the Court has specific jurisdiction over BMS because "[d]efendant ha[s] transacted business and committed tortious acts within the State." (Dkt. 21 at 3-4.)

In relevant part, Michigan's long-arm statute "extends limited personal jurisdiction over a nonresident corporation in claims 'arising out of the act or acts which create any of the following relationships,' including: '[t]he transaction of any business within the state' under § 600.715(1), '[t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort' under § 600.715(2)." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d

15

883, 888 (6th Cir. 2002). Thus, a court may exercise specific jurisdiction if the statutory requirements are satisfied and such exercise is "in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). "Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements and thus, the [statutory and due process inquiries] become one.'" *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

To determine whether the exercise of personal jurisdiction is consistent with due process, plaintiff must satisfy a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Here, there is no dispute that defendant has transacted business in Michigan. Further, as set forth above, there is no dispute that defendant

16

is licensed to sell its products here. Together, these facts establish purposeful availment: not only did defendant act affirmatively to obtain a license from the State to sell its products, it then actually sold those products to customers within the State.[4] Thus, defendant's contacts with Michigan are not "random, fortuitous, or attenuated"; rather, defendant has "deliberately [] engaged in significant activities within" Michigan, and therefore purposefully availed itself of the privilege to act within it. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Air Prods. & Ctrls., Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007); *Huizenga v. Gwynn*, --- F. Supp. 3d ---, 2016 WL 7385730, at *6 (E.D. Mich. Dec. 21, 2016).

The next issue is whether the causes of action arise out of these contacts. While the Sixth Circuit has "articulated the standard for this prong in a number of different ways, . . . [i]t is clear [] that this is a lenient standard, and the cause of action need not formally arise from defendant's contacts." *AlixPartners, LLP*, 836 F.3d at 552 (internal quotations and citations omitted). "At a minimum, this factor is satisfied

---

[4] Plaintiff fails to allege expressly that defendant actually sold products in Michigan. But the Court must read the pleadings in the light most favorable to plaintiff, and finds it reasonable to infer that "transacted business" refers to the sale of defendant's products in Michigan.

17

if the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities." *Id.*

In this case, plaintiff has alleged that defendant is licensed to distribute its products in Michigan and that it has "transacted business" here. But having a license and "transacting business"—whatever that may be, as plaintiff offers no additional explanation—does not have a substantial connection with sending or causing to be sent faxes advertising products or converting the toner, paper, and employees' time through the sending of faxes. As discussed above, even if it is reasonable to infer that the "transacted business" is the sale of products in Michigan, selling is not equivalent to advertising, and plaintiff offers no allegations to suggest that defendant advertises in Michigan or has hired Mohawk, Inc., whose name, logo, and contact information is listed on the faxes, to advertise on its behalf. Even though this is a lenient standard, plaintiff has failed to state a *prima facie* case that the causes of action arise out of this defendant's contacts with Michigan. Accordingly, the due process inquiry is not satisfied, and this Court lacks personal jurisdiction over BMS.

Even assuming that the Court has personal jurisdiction over BMS, the analysis as to whether Pfizer, Inc. violated the TCPA and is liable for conversion would be equally applicable to BMS.

## IV. Conclusion

For the reasons set forth above, defendants' motions to dismiss (Dkts. 44, 45) are GRANTED.

Because the amended complaint is hereby dismissed, plaintiff's motion to certify the class (Dkt. 3) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: July 17, 2017       s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2017.

     s/Shawna Burns
     SHAWNA BURNS
     Case Manager